UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE PARKER, | ) | Case No. 1:06 CV 1372 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | |
| JAVITCH, BLOCK & RATHBONE, LLP, | ) | MEMORANDUM OF OPINION |
| et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On June 5, 2006, plaintiff pro se Eugene Parker filed this action against the law firm of Javitch, Block, & Rathbone, LLP and MBNA America Bank, N.A. ("MBNA"). In the complaint, Mr. Parker contends that MBNA declared him to be in default of his credit card payments, reported this default to credit reporting agencies, and retained the services of Javitch, Block, and & Rathbone to pursue a legal action against him to collect the debt. He asserts causes of action for fraudulent concealment, breach of agreement, libel, mail fraud, extortion, and "contract ultra virus" under "the Constitution of the United States of America, Article I, Section 8:interstate commerce; and Amendment V: denial of due process." (Compl. at 2-3.)

The defendants filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (ECF No. 4) on June 26, 2006. Mr. Parker responded on July 3, 2006, with a Motion to Amend Complaint (ECF No. 5.) This pleading is asserted solely against MBNA and includes a single cause of action, a claim for breach of contract. Javitch, Block & Rathbone and MBNA

opposed his Motion to Amend Complaint, contending that the amendment also failed to establish federal jurisdiction and failed to state a claim upon which relief could be granted. (ECF No. 6.) MBNA filed a second Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim. (ECF No. 8.) Mr. Parker replied to each of the defendant's Motions. Mr. Parker's Motion to Amend the Complaint (ECF No. 5) is granted and Javitch, Block & Rathbone is dismissed as a party to this action. For the reasons set forth below, Defendant MBNA's Motion to Dismiss is granted and this action is dismissed.

## I.  FACTS

Mr. Parker obtained a credit card from MBNA and thereafter failed to make payments on the balance accrued. In accordance with the terms and conditions of the credit card agreement, MBNA submitted the matter to binding arbitration in the National Arbitration Forum. The Arbitrator issued a decision in favor of MBNA in the amount of $11,220.59. Mr. Parker subsequently paid $3 00.00 on the account leaving a balance of $10,920.59. MBNA filed an action on August 23, 2005, in the Cuyahoga County Court of Common Pleas to confirm and enforce the arbitration award. Mr. Parker filed a Motion to Dismiss to Defend Against the Arbirtration Award on September 6, 2005, and later requested an award of sanctions against MBNA. The court issued its decision on January 19, 2006, confirming the arbitration award and issuing judgment in favor of MBNA in the amount of $ 11,220.59. The judgment was corrected nunc pro tunc to reflect the $300.00 payment made by Mr. Parker prior to the commencement of the court action.

On May 31, 2006, Mr. Parker sought to erase the debt by sending a document to MBNA entitled, "Tender of Payment Sight Draft." (Am. Compl. Ex. A.) This document consisted of five typewritten letter-sized pages which purported to authorize payment of $11,604.43 from an

account at Charter One Bank to MBNA, if MBNA complied with certain conditions. Those conditions included presentment of the document to Charter One Bank within "ten days after sight," along with the "original signed application from undersigned, [the] original signed application from cardholder, and proof that cardholder used this account" (Am. Compl. Ex. A.) Payment was also conditioned upon MBNA executing two affidavits. The first affidavit was to state that "[t]he original [credit card] application was not used directly or indirectly to fund this account, [t]he charge slips were not used directly or indirectly to fund this account, [t]his account was funded by money owned by account issuer, the account issuer has the account balance at risk, the account is still currently owned by original issuer and if not, who owns the account and how much did they pay for it?" (Am. Compl. Ex. A.) The five-page document also contained a second affidavit for MBNA to sign stating in part that "the policy of the bank is that the party who funded the loan, per bookkeeping entries, is to be repaid the money" and that if "it should be discovered that [MBNA] failed to be completely truthful as to any statement, that any and all loans or alleged loans issued or purchased at the bank are forgiven without recourse, and shall immediately be considered null and void, signed under penalty of perjury." (Compl. at 3.) Page five of the document concludes by stating that if the Tender of Payment Sight Draft was not presented to Charter One Bank in complete compliance with the terms and conditions of the document, the $11,604.43 is considered paid in full and MBNA is presumed to have breached its contract with Mr. Parker. MBNA did not sign the affidavits and did not attempt to present the Tender of Payment Sight Draft to Charter One Bank.

    Mr. Parker then sent out his own "Notice and Judgment of Default" to MBNA on June 15, 2006. This Notice, signed only by Mr. Parker, states that because MBNA did not tender the Sight Draft to Charter One Bank under his terms and conditions, MBNA is "deemed to be in

3

default." (Am. Compl. Ex. B.)  He then issues his own "Decision," ordering MBNA to zero his credit card account balance and report to all credit reporting agencies that his account has been paid in full as agreed by the parties.  He further states that MBNA failed to provide proof of his debt which he contends is evidence that MBNA "used [his] property to fund the instant account...and failed or refused to return [his] property as required."  (Am. Compl. Ex. B.)  He orders MBNA to pay to him the sum of $9,000.00 in principal and $29,495.57 in interest for a total of $38,495.57. Mr. Parker filed the within action to seek a declaration by this court that MBNA breached its agreement with the plaintiff by failing to accept his Tender of Sight Draft under the terms he demanded, and award him compensatory damages in the amount of $38,495.57, and punitive damages in the amount of $38,495.57 for a total of $76,991.14.

## II. RULE 12(b)(1)

MBNA contends Mr. Parker failed to establish a basis for federal court jurisidction over this matter.  Where jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  Rogers v. Stratton Industries, Inc., 798 F.2d 913, 915 (6th Cir.1986).  Moreover, the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged.  Id., at 915, 918 (contrasting analysis under Rule 12(b)(6) where existence of genuine issues of material fact warrants denial of the motion to dismiss).

Although Mr. Parker originally attempted to invoke both federal question and diversity jurisdiction, he amended his complaint to state a single cause of action which arises under Ohio law.  To establish federal court jurisdiction based solely on diversity of citizenship, the plaintiff must demonstrate that each of the defendants is a citizen of a state different from the state in which the plaintiff resides, and that the amount in controversy exceeds the sum or value of

4

$75,000.00, exclusive of interest or costs. 28 U.S.C. § 1332(a); Safeco Ins. Co. of America v. City of White House, Tenn, 36 F.3d 540, 544-45 (6th Cir. 1994). Mr. Parker alleges that the only defendant remaining in this action, MBNA, is incorporated in the State of Delaware. As Mr. Parker is a citizen of the State of Ohio, it appears that the citizenship of the parties is diverse.

The inquiry to establish jurisdiction, however, does not end there. Mr. Parker must also demonstrate that the amount in controversy in the action exceeds $75,000.00, exclusive of interest and fees. He states in his amended complaint that MBNA owes him the sum of $9,000.00 for its alleged breach of contract. (Am. Compl. Ex. C.) Mr. Parker then calculates that MBNA should pay him $29,495.57 in interest for a total of $38,495.57. Mr. Parker also seeks punitive damages for the alleged breach of contract in the amount of $38,495.57. For the purpose of establishing diversity jurisdiction, the sum claimed by the plaintiff controls the amount in controversy if the claim is apparently made in good faith, unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000). It is evident on the face of the amended complaint that Mr. Parker cannot legally collect the amount of damages he seeks to recover.

Mr. Parker asserts that he is entitled to be paid $29,495.57 in interest on the amount of actual damages he contends he incurred from the defendant's alleged breach of contract. As an initial matter, the amount in controversy cannot be established by the inclusion of interest or fees. See 28 U.S.C. § 1332(a). Furthermore, Mr. Parker cannot support his interest calculation of $29,495.57, even at an annual percentage rate of 29.44%. He applies this rate to the $9,000.00 he contends he is owed, beginning in March 2002, and ending June 14, 2006. The alleged contract from which plaintiff contends the breach occurred was not even presented to MBNA until May 31,

5

2006, and Mr. Parker alleges that MBNA had ten days after presentment to comply with the terms of this document before a breach would occur. Consequently, the interest on the amount he contends he is owed from the breach could not have begun to accrue until June 10, 2006. His interest calculation ends on June 14, 2006. The amount of interest that would accrue during that four-day period of time is far less than $29,495.57.

Moreover, to arrive at an amount in controversy that exceeds $75,000.00, Mr. Parker also seeks $38,495.57 in punitive damages. The amount in controversy cannot be established to a legal certainty where the applicable state law bars the type of damages the plaintiff is seeking. Kovacs v. Chesley, 406 F.3d 393, 396 (6th Cir. 2005). Under Ohio law, punitive damages are not recoverable in an action for breach of contract. Digital & Analog Design Corp. v. N. Supply Co., 44 Ohio St.3d 36, 45-46 (1989). Mr. Parker can collect only compensatory damages on his single claim before this court, which places the value of his case far below the jurisdictional amount. Even if Mr. Parker could collect all of the compensatory damages he seeks, including the amount he set forth in his flawed interest calculation, he could not collect the $38, 495.57 in punitive damages he seeks in order to bring his amount in controversy over the jurisdictional limit. As such, he cannot premise this court's jurisdiction upon diversity of citizenship. MBNA's 12(b)(1) Motion is granted.

### III. RULE 12(b)(6)

MBNA also seeks dismissal on the grounds that the Amended Complaint fails to state a claim upon which relief may be granted. A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All well-pled allegations must be taken as true and construed most favorably

6

toward the non-movant. Mayer v. Mylod, 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint. Mr. Parker's claim for breach of contract meets these criteria.

To state a prima facie case for breach of contract, the plaintiff must show the existence of a contract; performance by the plaintiff; breach by the defendant; and damage or loss to the plaintiff. Lotfi-Fard v. First Fed. of Lakewood, No. 87207, 2006 WL 2036466 slip op. at *5 (Ohio App. 8 Dist. July 20, 2006). To constitute a valid contract, there must be an offer by one party, an acceptance of that offer by the other party, which results in meeting of the parties' minds, and consideration. Noroski v. Fallet, 2 Ohio St.3d 77 (1982). It is essential that there be a "meeting of the minds" as to the essential terms of the agreement. Kostelnik v. Helper, 96 Ohio St.3d 1, 16 (2002). If the offer is not accepted or if the parties do not agree on the terms, there can be no contract. Id.

In his attempt to discharge his judgment debt Mr. Parker created the Tender of Payment Sight Draft which conditioned his payment of the judgment amount, assuming Charter One would honor the Draft if presented, upon MBNA's admission to statements which would arguably absolve Mr. Parker of the underlying credit card liability. Mr. Parker further added to the Draft a statement which would absolve him of the judgment debt if MBNA did not agree to the terms and

present the Draft for payment. Mr. Parker cannot bind MBNA to a contract simply by mailing it to them, and it is apparent that MBNA did not accept Mr. Parker's offer. As there was no acceptance of the offer and no meeting of the minds of the parties on the essential terms of the Tender of Payment Sight Draft, there is no contract. Without a contract, there can be no breach.

Moreover, it is apparent from the terms of the Tender of Payment Sight Draft, that Mr. Parker is attempting to challenge his credit card liability to MBNA. That issue was already resolved in favor of MBNA by the Cuyahoga County Court of Common Pleas. A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; Dubuc v. Green Oak Township, 312 F.3d 736, 744 (6th Cir. 2002). The preclusive effect of the previous state court judgments are therefore governed by Ohio law on preclusion. Id. Under Ohio law,

> a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different, the relitigation of a fact or point that was actually and directly at issue in a previous proceeding between the same parties or their privies, and was passed upon and determined by a court of competent jurisdiction.

Fort Frye Teachers Assn., OEA/NEA v. State Empl. Relations Bd., 81 Ohio St.3d 392, 395 (1998). This doctrine of res judicata, which includes both issue preclusion and claim preclusion, serves to "protect[ ] litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane v. Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979); see also, Kelly v. Georgia-Pacific Corp., 46 Ohio St.3d 134, 143 (1989). The issue of Mr. Parker's credit card liability was already conclusively determined by the Cuyahoga County Court of Common Pleas. This court is bound to give full faith and credit to that

8

state court decision. Therefore, as a matter of law, Mr. Parker is precluded from challenging his credit card liability in this court.

## IV. CONCLUSION

Accordingly, MBNA's Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim (ECF No. 8.) is granted and this action is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

August 22, 2006